**FILED**
**Nov 24, 2025**
**10:51 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| Talin Hubbard, | ) | Docket No. 2025-60-0029 |
| Employee, | ) | |
| v. | ) | |
| Discount Tire, LLC, | ) | State File No. 37439-2023 |
| Employer, | ) | |
| And | ) | |
| Old Republic Insurance Co., | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

## COMPENSATION ORDER GRANTING BENEFITS

The Court held a compensation hearing on November 12, 2025, on Talin Hubbard's entitlement to permanent disability benefits. The parties dispute two issues. First, did Mr. Hubbard sustain a 0% impairment assigned by his treating physician, or 1% placed by a physician from the Medical Impairment Rating Registry? Second, is he entitled to increased benefits?

The Court adopts the 1% rating because Discount Tire did not offer clear and convincing evidence to overcome the presumption of correctness given to the Registry physician's opinion. Further, Mr. Hubbard has shown by a preponderance of the evidence that he did not return to work for any employer, so he is entitled to increased benefits.

### Claim History

Mr. Hubbard, a tire technician, was injured at work on or about February 28, 2023. While pulling a bar down to remove a tire, he heard a "pop" in the center of his chest and felt immediate, severe pain.

Mr. Hubbard later formally reported his claim and selected a physician from a panel offered by Discount Tire. He did not actually see this doctor but instead saw other doctors and nurse practitioners from the selected physician's clinic.

1

Notably, Dr. Peter Silkowski first diagnosed "costal chondritis" and "somatic dysfunction of costochondral region" in May 2023 and recommended modified duty. Dr. Robert Kasper repeated those diagnoses a month later and referred Mr. Hubbard to physical therapy and pain management.

In January 2024, Mr. Hubbard came under the authorized care of Dr. Gale Jackson, a family medicine physician. Dr. Jackson's nurse practitioners maintained the same diagnoses and light-duty restrictions over the next several months.

Ultimately, Dr. Jackson placed Mr. Hubbard at maximum medical improvement on June 18, 2024, with 0% impairment and no work restrictions. That same day, Dr. Jackson wrote a letter stating that Mr. Hubbard was diagnosed with costochondritis and explained:

> This is an acute condition that can occur due to trauma to chest wall muscle or strain of cartilage that connects ribs to breastbone (sternal). This is not a chronic condition that requires people to be unable to work. . . . From an Occupational Medicine Standpoint *this is no longer a work related [condition]* so he needs to follow up with PCP to determine if there is a chronic [under]lying disorder caused by his non-cardiac chest pain.

(Emphasis added).

As for pain management, in July 2024, Mr. Hubbard saw Dr. Jeff Kindred, whom Discount Tire also authorized. He ordered a chest MRI, and after reviewing the results in August, Dr. Kindred wrote that it showed no structural abnormality to explain his chest pain. Regardless, Dr. Kindred noted, "I do think this is work related," He also wrote a separate letter for the carrier saying in part, "in my professional opinion this is a work related injury." He repeated that causation opinion in a second letter to the carrier and also placed work restrictions. At the next visit, Dr. Kindred wrote: "I do not do impairment ratings but estimated his at 40%."

Given the wide disparity between the ratings, the parties sought a rating from Dr. Karen Oldham through the Medical Impairment Rating Registry. She examined Mr. Hubbard and reviewed and summarized his treatment history, including the July 2024 "normal" chest MRI, and his responses to a Pain Disability Questionnaire.

In her report, Dr. Oldham listed "chronic pain syndrome" as Mr. Hubbard's diagnosis with a "ratable permanent impairment *causally related to the work injury.*" (Emphasis added). She used Table 3-1 of the *Guides, 6th Edition* to assign a rating. Dr. Oldham wrote that Mr. Hubbard's physical exam showed no muscle atrophy and he has "normal muscle development tone and strength in the upper extremities and neck, indicating that he does not avoid using his arms and chest wall muscles." This would suggest that Mr. Hubbard has no significant impairment.

She continued, however, that "the whole person must be considered in making this determination." Dr. Oldham reasoned:

> The claimant has a strong emotional component to his pain preventing him from engaging in social activities or working outside his home. He had significant anxiety every time he attempted to return to work. The fear of having the same pain again is paralyzing to him. He depends heavily on his family to provide income, driving, and help with heavy lifting at home. In looking at the whole person, it can be said he has no impairment in terms of activities and function and no impairment from an objective physical exam. He does have significant emotional impairment due to his pain. In essence, he has one out of three areas of significant impairment.

Dr. Oldham wrote that the *Guides* allow for up to 3% impairment for chronic pain, but she chose to use one out of three for a rating. She concluded, "Therefore, in consideration of the entire functional, physical, and emotional burden of illness, I feel that an impairment of one percent [whole person impairment] is appropriate."

Afterward, Discount Tire deposed Dr. Jackson, who testified, "I support [Dr. Oldham's] impairment rating" and "I do not have evidence to dispute Dr. Karen Oldham's impairment rating."

On cross-examination Dr. Jackson said he had "no reason to think [Mr. Hubbard] was lying saying he hurts when he does certain things." He further agreed that Dr. Oldham rated Mr. Hubbard for chronic pain and not costochondritis and that Mr. Hubbard has ongoing pain. The exchange below also occurred:

> Q: Dr. Oldham seems to indicate that because of the injury he suffered at work he now has some at least permanent impairment.
> A: Uh-huh.
> Q: And I guess I'm curious. Do you agree with her assessment of that?
> A: I agree with her assessment.
> Q: Okay.
> A: I agree with her assessment.

For his part, Mr. Hubbard testified that the injury has had a dramatic impact on his work abilities. He was placed on light duty while treating but had difficulty performing his job even with accommodations. He testified, without contradiction, that after he reached maximum medical improvement, he was still on work restrictions from his primary care doctor and Dr. Kindred, but Discount Tire did not offer work within his restrictions. He has not worked since, fearing that he might reinjure his chest wall if he were to return to work.

As for his personal life, Mr. Hubbard said the chest pain prevents him from carrying and playing with his children and interferes with sleeping, driving, and performing household chores. He occasionally feels a rib "pop out."

**Findings of Fact and Conclusions of Law**

*Pretrial motions*

Mr. Hubbard moved the Court to continue the compensation hearing, requesting "additional time to receive newly ordered *related* medical care." (Emphasis added). He argued that his primary care physician recently discovered "a deformity in the chest wall" and referred him to a thoracic surgeon for further treatment.

Discount Tire opposed the continuance for several reasons, among them that the supporting medical records Mr. Hubbard offered do not relate the condition and/or need for treatment with a specialist to the work injury.

The Court agrees. Moreover, Mr. Hubbard was injured in February 2023 and has had ample time to obtain medical proof. He has not shown good cause, and the motion is denied.

Mr. Hubbard additionally moved for summary judgment, which the Court took under advisement at the hearing but now denies, as explained in the accompanying Order Denying Summary Judgment.

*Standard applied and permanent impairment*

Mr. Hubbard has the burden of proof on all essential elements of his claim and must show by a preponderance of the evidence that he is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2024); *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015).

The central issue in this case is which impairment rating is correct. Dr. Oldham, the Medical Impairment Rating Registry physician, assigned a 1% rating. Dr. Jackson, the authorized physician, assigned a 0% rating in June 2024, but at his deposition a year later, he repeatedly said he agreed with Dr. Oldham's opinion.

Tennessee Code Annotated section 50-6-204(d)(4) states that when parties dispute medical impairment, "either party may request an independent medical examiner from the administrator's registry." Further, "[t]he written opinion as to the permanent impairment rating given by the independent medical examiner . . . shall be presumed to be the accurate impairment rating; provided, however that this presumption may be rebutted by *clear and convincing evidence[.]*" *Id.* § 50-6-204(d)(4) (Emphasis added).

4

Here, Dr. Oldham performed a thorough evaluation, examining Mr. Hubbard, considering his treatment records, reviewing imaging, and discussing the pain disability questionnaire with him. She identified which portion of the *Guides* she used and gave a detailed explanation of how she arrived at a 1% rating for Mr. Hubbard's chronic pain syndrome.

Discount Tire made several unpersuasive arguments.

First, it pointed out that Dr. Jackson gave a different diagnosis than Dr. Oldham. This argument overlooks Dr. Oldham's acknowledgement of Mr. Hubbard's physical condition—but she went on to write that "the whole person must be considered." She reasoned that the *Guides* allow for up to 3% impairment for chronic pain and chose the lowest permissible degree of impairment, considering "the entire functional, physical, and emotional burden of illness." As for Discount Tire's contention that Dr. Oldham erroneously found that Mr. Hubbard satisfied the *Guides* criteria for a chronic pain syndrome diagnosis, it offered no expert opinion to support that argument.

Discount Tire further questioned compensability, asserting that Mr. Hubbard claimed a mental injury. However, Dr. Oldham and both authorized doctors found his condition work-related. Dr. Jackson testified that Mr. Hubbard's chest pain was work-related until he reached maximum medical improvement, while Dr. Kindred wrote in both records and letters to the carrier that the injury was work-related.

Mr. Hubbard supported the idea that he retains an impairment when he credibly testified to the physical limitations he now experiences. "[T]he Supreme Court has consistently held that an employee's assessment as to his or her own physical condition is competent testimony that is not to be disregarded." *Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *6 (Sept. 12, 2017).

More importantly, *Dr. Jackson deferred to Dr. Oldham's opinion.* Therefore, Mr. Hubbard has shown by a preponderance of the evidence that Dr. Oldham's 1% rating is correct, and Discount Tire has not shown by clear and convincing evidence that it is incorrect.

*Benefits*

Mr. Hubbard is entitled to 450 weeks times his impairment rating of 1% times his compensation rate of $414.98, which yields an original award of $1,867.41. *Id.* § 50-6-207(3)(A).

Further, subdivision 50-6-207(3)(B) states that when an employee has not returned to work with any employer, the original award shall be increased by multiplying it by 1.35.

Considering this, Mr. Hubbard testified that he was unable to perform the modified duty Discount Tire offered and that eventually it stopped offering him light duty. He also said that he has not returned to work.

Discount Tire argued that Mr. Hubbard voluntarily resigned, but it introduced no proof of that, nor did it contradict his testimony that it ceased offering him light duty. Therefore, Mr. Hubbard has shown by a preponderance of the evidence that he has not returned to work for any employer. His resulting award is $2,521.00, and his attorneys are entitled to 20% of this sum, or $504.20.[1]

Finally, Mr. Hubbard additionally requested open medical benefits under subdivision 50-6-204(a)(1)(A). Discount Tire argued this should be limited to treatment for costochondritis, not his chronic pain syndrome. However, "[a]n employer is responsible for reasonable and necessary medical care resulting from an employee's work-related injury[.]" *Barron v. State Dep't of Human Servs.,* 184 S.W.3d 219, 223 (Tenn. 2006). Dr. Oldham concluded that his chronic pain syndrome relates to work. Mr. Hubbard has shown by a preponderance of the evidence that he is entitled to reasonable, necessary, and work-related treatment for costochondritis and chronic pain syndrome.

IT IS ORDERED AS FOLLOWS:

1. Discount Tire shall pay Mr. Hubbard permanent partial disability benefits of $2,521.00. His attorneys are entitled to a 20% fee from this award under section 50-6-226(a)(1), or $504.20. If appropriate, they may file a motion for discretionary costs and an affidavit under Rule 54 of the Tennessee Rules of Civil Procedure within seven days of the date of this Order.

2. Discount Tire shall provide reasonable, necessary, and work-related future medical benefits with Drs. Jackson and/or Kindred.

3. The Court taxes the $150.00 filing fee to Discount Tire, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (2023) within five business days, and for which execution might issue.

4. Discount Tire shall file a Statistical Data Form (SD-2) with the Court Clerk within ten business days of the date of this order.

5. Unless appealed, this order becomes final 30 days after entry.

---

[1] Mr. Hubbard additionally requested fees under subdivision 50-6-226(d)(1)(B) but made no argument in support in his brief or at the hearing, so the request is waived.

**ENTERED November 24, 2025.**


_Kenneth M. Switzer_
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits:
1. Deposition transcript, Dr. Jackson
2. Composite medical records
3. Medical Impairment Rating Registry Report
4. Panel
5. Final medical report and attachments, Dr. Jackson

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on November 24, 2025.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Victoria Herman, Michael Ponce, employee's attorneys | | | X | vherman@poncelaw.com mponce@poncelaw.com kfaig@poncelaw.com |
| Greg Fuller, Noah Klinsky, employer's attorneys | | | X | ghfuller@mijs.com naklinsky@mijs.com |


_Penny Shrum_
Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____
*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*